UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISALUS, INC.,

      Plaintiff,                         Case No.

v.                                   Hon.

ASHLEY SARNICOLA,

      Defendant.
_____

JACKSON LEWIS P.C.
Katherine J. Van Dyke (P62806)
2000 Town Center, Suite 1650
Southfield, Michigan 48075
(248) 936-1900
katherine.vandyke@jacksonlewis.com
Attorneys for Plaintiff

_____

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, ViSalus, Inc. ("ViSalus" or the "Company"), by its attorneys, and for its complaint against Defendant, Ashley Sarnicola ("Sarnicola"), states as follows:

## PRELIMINARY STATEMENT

Until recently, Sarnicola was an independent distributor of ViSalus weight management products, nutritional supplements, and energy drinks. When enrolling to become an independent distributor of ViSalus products, Sarnicola agreed to be

1

bound by the ViSalus Independent Promoter Terms of Agreement, including a non-solicitation clause prohibiting Sarnicola from recruiting ViSalus distributors to join ViSalus' competitors for one year after terminating her relationship with ViSalus ("Non-Solicitation Agreement").

On October 19, 2018, Sarnicola voluntarily terminated her relationship with ViSalus. ViSalus has information that Sarnicola, while bound by and in direct violation of the foregoing agreement, is now distributing and marketing on behalf of Isagenix, a direct competitor of ViSalus, and is attempting to recruit ViSalus distributors to join Isagenix. Upon learning this information, ViSalus, through its Chief Legal Officer, sent Sarnicola a demand to cease and desist. Sarnicola failed to cease and desist from contacting, soliciting, and/or recruiting ViSalus promoters. Sarnicola's actions have harmed ViSalus and threaten further irreparable injury unless Sarnicola is enjoined from violating her contractual obligations to ViSalus.

## PARTIES, JURISDICTION, AND VENUE

1.    This is an action asserting claims for breach of the Non-Solicitation Agreement by and between Sarnicola and ViSalus.

2.    ViSalus is a corporation organized under Nevada law with its principal place of business located at 340 E. Big Beaver, Ste. 400, Troy, Michigan 48083.

3.    On information and belief, Sarnicola is a citizen of the State of Florida

who maintains a residence at 1577 Cleveland Road, Miami Beach, Florida 33141. Sarnicola became a ViSalus distributor as an independent contractor.  Sarnicola formally resigned as a ViSalus distributor on October 19, 2018.

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1) based on the parties' diversity of citizenship and the amount in controversy exceeds $75,000.

5.     Venue lies in this district pursuant to the forum selection clause in the parties' agreements and because ViSalus' corporate headquarters is located in this district.

## FACTS - BACKGROUND

6.     ViSalus is a network marketing company that sells weight management products, nutritional supplements, and energy drinks.  As a network marketing company, ViSalus products are not sold through retail outlets.  Instead, ViSalus relies on a network of distributors (a/k/a "promoters") to market and sell ViSalus products directly to the public.

7.     Founded in 2005, ViSalus is a company in the network marketing (a/k/a direct selling) industry.  A key component of this business success has been ViSalus' ability to build and maintain a vast network of distributors who both market and sell ViSalus product and recruit additional distributors to join the ViSalus team.  This distribution network is the channel through which ViSalus

ultimately is able to sell its products to the end users.

8.     To encourage distributors to encourage growth of product sales through the recruitment of other distributors, ViSalus not only rewards its top performing distributors through a generous compensation plan, ViSalus also raises their profile within the ViSalus network and publicizes their achievements throughout the ViSalus distributor community.

9.     ViSalus uses a metric to measure a distributor's sales success and assign ranks known as Group Qualification Volume ("GQV").  The GQV measures the volume of sales generated by the distributor's team.  A distributor's success in recruiting, training, and developing other distributors – which is known as their "downline network" – is measured by the number of distributors that they directly recruit and the rank achieved by those distributors.  Through this distribution network, ViSalus is able to reach more and more end users of its products.

10.     ViSalus maintains a web-based intranet system known as Vi-Net. Vi-Net is accessible to all ViSalus' distributors. On Vi-Net, ViSalus recognizes each week those distributors who had received a promotion to a higher rank.  ViSalus also distributes a quarterly newsletter to its distributors identifying the distributors who have been promoted in the last quarter and touting their successes to the ViSalus network of distributors.

11.    In addition, ViSalus hosts regional and national meetings, at substantial expense, at which individuals receiving promotions are recognized by the Company in front of large audiences of other distributors.

12.    During ViSalus' regional and national meetings, its high-ranking distributors are also given special access to other top performers through closed-door sessions that are limited to distributors who have achieved a certain rank within the Company, such as National Director- and Ambassador-only sessions.

13.    Through this process of recognizing and promoting distributors for growing their GQV and downline network, high-ranking distributors gain access to, and become known to, others who have proved themselves to be superior performers in the network marketing industry and also gain insights into which distributors are rising more quickly than others – *i.e.*, which distributors are likely to continue their success.  Further, as a recognized leader in growing a customer and distributor network, a high-ranking distributor at ViSalus also obtains influence over other distributors who aspire to expand their own networks, increase their customer base and product sales, and thereby increase their compensation.

## Sarnicola's Relationship with ViSalus

14.    Most recently on October 2, 2013, Sarnicola joined ViSalus as a promoter.

15.    As of October 2018, Sarnicola was responsible for sales, including her

5

downline, of $8,255,881 in 2013, $24,255,085 in 2014, $32,201,552 in 2015, $22,198,464 in 2016, $10,240,295 in 2017, and $1,749,695 in 2018.

16.     As Sarnicola progressed through ViSalus' ranks, ViSalus internally marketed their achievements and promotions through the Vi-Net site and ViSalus' quarterly newsletter.  In addition, Sarnicola's accomplishments were recognized by ViSalus in front of other distributors.

17.     Attaining a high rank within the ViSalus distributor community and receiving accolades and visibility from ViSalus, as Sarnicola did, essentially "brands" distributors such as Sarnicola both as a highly successful individual and as an individual on whose team other distributors want to be.  To competitors of ViSalus, it is desirable to recruit successful and high-ranking distributors such as Sarnicola, because her "star power" will attract other distributors without further efforts by the competitor.

18.     Ordinarily, ViSalus is willing to live with this fact, provided the distributor does not actively solicit or recruit other ViSalus distributors. Sarnicola's Agreement with ViSalus was meant to alleviate ViSalus' concerns that Sarnicola would actively solicit or recruit other ViSalus distributors.

## Sarnicola's Agreements with ViSalus

19.     To be a distributor, Sarnicola registered online.  In the online registration, Sarnicola was provided with a list of acknowledgements and

6

agreements to which she had to agree as a condition to becoming a ViSalus distributor. These terms included a Non-Solicitation Agreement. See Ex. A.

20.    The ID Terms of Agreement and Policies and Procedures contained the following Non-Solicitation provision:

> During the term of this Agreement (and any renewals) and for one (1) year thereafter, I understand and agree that I will not contact, solicit or recruit any VIP, whether active or inactive, into any organization that utilizes a multi-tiered compensation plan. This includes indirect recruiting through Facebook or other social media. I acknowledge that my violation of this provision will result in immediate termination of my Promotership and payments of any kind.

> See Ex. A, pg. 2, ¶ 24.

21.    Sarnicola accepted the benefits of her Non-Solicitation Agreement, including access to ViSalus' products, commission payments, marketing materials, and customer tracking and accounting services. While affiliated with ViSalus and accepting the benefits of her affiliation with ViSalus, Sarnicola did not object to the Non-Solicitation Agreement or any of its terms or conditions.

**Sarnicola's Violation of the Non-Solicitation Agreement**

22.    In direct violation of the Non-Solicitation Agreement, Sarnicola is actively soliciting and recruiting ViSalus distributors to Isagenix.

23.    Sarnicola has violated and continued to violate her Agreements despite a demand to cease and desist. Ex. G. By her conduct, it is clear that, unless enjoined from doing so, Sarnicola will continue to recruit and solicit ViSalus

distributors to Isagenix and expose ViSalus to substantial, and irreparable, harm to its legitimate business interests.

**First Cause of Action**
**Breach of Contract—Non-Solicitation Agreement**

24.     ViSalus repeats and realleges each and every allegation set forth in Paragraphs 1 through 23, above, as though fully set forth herein.

25.     By virtue of the conduct described above, Sarnicola has breached the Non-Solicitation Agreement.

26.     As a direct and proximate result of Sarnicola's breach of the Non-Solicitation Agreement, ViSalus has been injured and will continue to be injured through the loss of distributors and business revenue to a direct competitor.

27.     ViSalus' injuries cannot be fully quantified, and ViSalus has suffered and/or will suffer irreparable harm due to Sarnicola's actions.

28.     ViSalus has no adequate remedy at law, and the balance of hardships favors entering of an injunction against Sarnicola.

29.     ViSalus has a legitimate protectable business interest in enforcing the terms of the Non-Solicitation Agreement against Sarnicola, as it serves to protect ViSalus' distributor network by preventing Sarnicola from exploiting the knowledge of, relationships with, and influence over ViSalus' distributors that she obtained as a result of ViSalus' active promotion and marketing of her within the Company.

30.    The scope of the non-solicitation provision contained in the Non-Solicitation Agreement is reasonable because it runs for only one year and only limits Sarnicola's abilities to solicit and recruit ViSalus distributors.

**Second Cause of Action**
**Tortious Interference with Business Relationships**

31.    ViSalus repeats and realleges each and every allegation set forth in Paragraphs 1 through 30 above as though fully set forth herein.

32.    By virtue of the conduct described above, Sarnicola has tortiously interfered with ViSalus' business relationships between ViSalus and its distributors.

33.    Sarnicola was fully aware of the business relationships between ViSalus and its distributors, including the aforementioned distributors, and intentionally and without justification interfered with those relationships.

34.    ViSalus has been damaged as a result of Sarnicola's actions through the loss of its business relationships with its distributors and the loss of potential business from those distributors, all in an amount to be determined at trial.

35.    Sarnicola acted intentionally, willfully, and with reckless disregard to ViSalus' rights.

WHEREFORE, ViSalus respectfully prays that the Court:

(a)    issue temporary, preliminary, and permanent injunctive relief against Ashley Sarnicola, and that Sarnicola, as well as her agents, representatives,

servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Sarnicola, be enjoined and restrained from soliciting or recruiting any ViSalus employees or distributors to participate in any network marketing program, including, but not limited to, Isagenix, for a period of one (1) year from the date that Sarnicola's relationship was terminated with ViSalus plus the period of time that this Court determines Sarnicola was in breach of the non-solicitation provision of the Agreement;

(b)     enter a judgment against Sarnicola that she has committed a breach of the Non-Solicitation Agreement by her acts and conduct set forth in this Complaint;

(c)     order Sarnicola to pay ViSalus for the damages caused by her unlawful conduct, in an amount to be determined at trial;

(d)     award ViSalus its costs and reasonable attorneys' fees;

(e)     award ViSalus prejudgment interest on any monetary award; and

(f)     award ViSalus such other and further relief as this Court deems just.

Dated:  November 2, 2018          Respectfully submitted,

JACKSON LEWIS P.C.

/s/Katherine J. Van Dyke
Katherine J. Van Dyke (P62806)
2000 Town Center, Suite 1650
Southfield, Michigan 48075
(248) 936-1900
katherine.vandyke@jacksonlewis.com
Attorneys for Plaintiff

# VERIFICATION

Zorica Bosev, under penalty of perjury declares and states:

1.  I am over eighteen years of age; have personal knowledge of the facts set forth above; and I am otherwise competent to testify to the matters stated below.

2.  Currently and at all times relevant, I have been employed by ViSalus Inc. ("ViSalus").  My current title with ViSalus is Director, Global Commissions & Support.

3.  I have read the above and foregoing Complaint For Injunctive and Other Relief.

4.  The facts stated in the foregoing Complaint For Injunctive Relief are true and correct to the best of my knowledge and information.

AS PROVIDED FOR BY 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON November 1, 2018.

_____
ZORICA BOSEV

# EXHIBIT A



**Body by Vi CHALLENGE**

## VISALUS® INDEPENDENT PROMOTER (VIP) APPLICATION

Fax Form to 1.877.547.1570

**STEP 1: Join Our Team.** Please choose an enrollment option.

PROMOTER SYSTEMS

☐ **BASIC** $49
+ PURCHASE YOUR CHALLENGE KIT FROM $49–$299

☐ **EXECUTIVE** $499
25% OFF

☐ **EXECUTIVE UPGRADE** $450
I already purchased my BASIC. I want to upgrade now!
RISING STAR
BIMMER CLUB

☐ **STAR** $999
TOTAL RETAIL VALUE $1,897
STORE 25% OFF
RISING STAR
BIMMER CLUB

VITALITY FREE

**STEP 2: Select Your Monthly Challenge Kit.** Choose the items you would like shipped to you each month.

☐ **BALANCE** KIT $49 / $68 Retail Value / SAVE $19
☐ **SHAPE** KIT $99 / $156 Retail Value / SAVE $57
☐ **CORE** KIT $199 / $278 Retail Value / SAVE $79
☐ **TRANSFORMATION** KIT $249 / $359 Retail Value / SAVE $90
☐ **FIT** KIT $299 / $409 Retail Value / SAVE $110

**NEW** Vi Crunch™ COMBO PACK
* Must have a standing Challenge Kit order to receive combo pack discount
☐ $49 (2 Weeks Supply) $61 Retail Value SAVE 14%
☐ $95 (4 Weeks Supply) $119 Retail Value SAVE 17%

**CHOOSE YOUR AUTO-SHIP DATE:** ☐ 5th ☐ 12th ☐ 19th
Executive enrollment Auto-Ship orders will be processed and shipped starting the next month on the selected date. Basic enrollment Auto-Ship orders will be processed and shipped with your enrollment package. If selected date lands on a weekend or holiday, orders will be processed on the last business day prior.

**STEP 3: Additional Products**

All additional product orders will be processed and shipped with your enrollment package.

| QTY | ITEM NAME | ITEM PRICE | AUTO-SHIP | ONE-TIME |
|---|---|---|---|---|
| | 50 Taster Packs | $250 | ☐ | ☐ |
| | 25 Starter Packs | $250 | ☐ | ☐ |
| | ViSalus GO™–2 oz. Shots | $48/box | ☐ | ☐ |
| | ViSalus PRO™–Drink Mix | $32/box | ☐ | ☐ |
| | Vi-Crunch™ Protein Super Cereal–14 Serving Pouch | $39 | ☐ | ☐ |

See Product Price Sheet for Item Numbers and pricing information.

| QTY | ITEM NAME | ITEM PRICE | AUTO-SHIP | ONE-TIME |
|---|---|---|---|---|
| | Nutra-Cookie™: Pick a Flavor | | | |
| | Oatmeal Raisin | $34/box | ☐ | ☐ |
| | Peanut Butter | $34/box | ☐ | ☐ |
| | Chocolate Chip | $34/box | ☐ | ☐ |
| | 30 Children's Shake Meals Donation $24 Shake Meal for Meal Match! | | ☐ | ☐ |

**STEP 4: Vi-Net® Login & Additional Tools**

Please select a unique username and password to access your ViSalus Back Office. If neither **Username** choice is available, username will default to your mailbox number.

(1st Choice): _____
(2nd Choice): _____

**Passwords** must have 6–16 characters and contain at least one letter and one number, e.g, rsmith2.

☐ You will automatically be subscribed to Vi-Net Pro plus ViSalus Success Club Subscription for $29/mo.

☐ Upgrade to Vi-Net Pro Swipe for $39/mo and get The Swiper for $49 (one time charge)

To change or cancel, call ViSalus Customer Service at 1.877.VISALUS

**STEP 5: Personal Information**

**IP# or SSN:** _____

Enroller Last Name: _____ First Name: _____
The Enroller is an existing IP who refers a new IP. The Enroller can place the new IP anywhere in the depth of his/her organization. Once the enrollment process is complete the enroller can add/change sponsor information in the "Waiting Room" found in Vi-Net.

Last Name: _____ First Name: _____
SSN or Tax ID: _____ Birth Date: ___/___/___
Company Name: _____
If doing business as a legal entity, complete and attach the Company Enrollment Form. (Required)

Shipping/Mailing Address: _____
Apt/Suite: _____
City: _____ State: _____ Zip: _____

Billing Address: _____
Apt/Suite: _____
City: _____ State: _____ Zip: _____

**Communication Preferences:**

Home Phone #: _____ Mobile Phone #: _____
Mobile Phone Provider: Required for ViSalus Mobile Updates (SMS) _____
E-mail Address: _____
Receive ViSalus News & Updates via: Check at least one
☐ Phone ☐ Email ☐ Mobile Text Message (SMS) ☐ None
Language Preference: ☐ English ☐ Spanish ☐ Both
Gender: ☐ Male ☐ Female

**Billing Information:**
Full Name on Credit Card: _____
Credit Card Number: |__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|
Expiration Date: _____ Security Code: _____
Card Type: ☐ Visa ☐ MasterCard ☐ Discover ☐ American Express
Cardholder Signature: _____

I authorize ViSalus to charge my account for the amount listed. I promise to pay such amount to and in agreement governing the use of such card. I understand that ViSalus will apply taxes, shipping and handling charges to my order. If the order is Auto-Ship or a monthly Vi-Net Subscription, I authorize ViSalus to ship/charge these products monthly. Cancellations must be submitted at least 5 days prior to the Auto-Ship date or Vi-Net billing date.

I understand that to become an Independent Promoter (IP) of ViSalus I am only required to submit this Agreement. I further acknowledge that my advancement in the ViSalus marketing plan is based solely upon the sales of ViSalus product. My purchase of sales aids or training material, or attendance at training classes, is strictly optional and at my discretion. I also understand that if I choose to enroll or sponsor other individuals to participate in ViSalus' marketing plan, I will only be compensated based upon the activities of other IPs to the extent of their sales made to customers.

By my signature below, I acknowledge that I have carefully read this Agreement,and I am willing to accept the terms and conditions herein and on the reverse side. I understand that the terms of this document shall be a binding Agreement between ViSalus and me and upon receipt of this Agreement. I have read and understand ViSalus'

Policies and Procedures and Compensation Plan, which are incorporated by reference herein, and agree to abide by them and any amendments thereto which maybe made from time-to-time.

*BASIC upgrade to EPS for $450 available within 30 days.

**I UNDERSTAND THAT I MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR OBLIGATION AT ANY TIME, FOR ANY REASON. I UNDERSTAND THAT MY NOTICE OF CANCELLATION MUST BE SUBMITTED IN WRITING TO THE COMPANY AT ITS PRINCIPAL BUSINESS ADDRESS. PLEASE SEE OTHER SIDE FOR TERMS.**

Applicant Signature: X _____ Date: _____

🇺🇸 ENG

340 E. Big Beaver Rd Suite 400, Troy, MI 48083 • Customer Service 1.877.VISALUS • vi.com
© 2013 ViSalus, Inc. All rights reserved. D1000US026 09.2013 1/2

 **Body by Vi** CHALLENGE

## VIP TERMS OF AGREEMENT

Fax Form to 1.877.547.1570

By joining ViSalus™ these are the Terms you have agreed to. Refer to the Policies and Procedures for detailed information.

1. I acknowledge that I am of legal age to enter into this Agreement and that I am a real person.

2. I understand and acknowledge that this Agreement is not binding until received and accepted by VISALUS.

3. I agree that as a Promoter, I am responsible for determining my own business activities and that I am not an agent, employee or legal representative of VISALUS. I am responsible for the payment of all federal and state employment taxes and any other tax required under any federal, state or regulatory law. In the event that I fail to provide VISALUS a valid Social Security Number or employer identification number, VISALUS may withhold commissions due to me until a valid number is provided.

4. I understand that I am not being sold a franchise or business opportunity.

5. I may terminate this Agreement for any reason, at any time, by giving VISALUS prior written notice. VISALUS may terminate this Agreement in writing upon violation of policies and procedures or in the event I violate any part of this Agreement. In such event, no further commissions will be paid by VISALUS. To terminate this Agreement, I must mail or deliver personally to VISALUS, a signed, dated written notice of cancellation sent to:  ViSalus, 1607 East Big Beaver, Troy, Michigan 48083.

6. I agree that as a VISALUS Promoter, I shall place primary emphasis upon the sale of Products and Services to non-Promoter consumers as a condition of my receipt of commissions. Commissions I receive will be based upon fulfilling certain terms of qualification as set forth by the Marketing Program and Compensation Plans as may be amended from time to time. A three ($3.00) Dollar processing fee will apply to all payments.

7. I agree to keep accurate records and to abide by all federal, state, and local laws and regulations governing the sale or solicitation of the products and services marketed by VISALUS including, but not limited to, any and all permits and licenses required to perform under this Agreement.

8. I understand that no attorney general or other regulatory authority ever reviews, endorses, or approves any product, subscription, compensation program or company, and I will make no such claim to others.

9. I understand that a $25 Administration Fee will be charged annually to my credit card on file with ViSalus. This fee is for services, which include, but are not limited to, downline reporting, customer tracking and accounting services. The Administration Fee will be charged in the month of my enrollment anniversary and if not paid will result in my Promotership being placed on Financial Hold for up to 120 days. If the Administration Fee remains unpaid 120 days after it was due, my Promotership will be terminated and I will forfeit any commissions that were held since the time I was placed on Financial Hold. If my Promotership is terminated, I understand that I must re-enroll as a brand new Promoter and will not be placed back in my original spot if I wish to pursue the ViSalus opportunity.

10. I agree that VISALUS shall not be liable under any circumstances for any damage or loss of any kind, including indirect, special, punitive, compensatory, or consequential damages, losses or profits which may result from any cause, including but not limited to, breach of warranty, delay, act, error or omission of VISALUS, or in the event of discontinuation or modification of a product or service offered by VISALUS.

11. VISALUS shall periodically make sales literature and/or promotional materials available. However, I am under no obligation to purchase any materials or literature at any time. Refunds shall not be allowed under any circumstances, including, but not limited to, termination of this Agreement, obsolescence of such sales literature or promotional materials, or any other reason. Except as specified in paragraph 26.

12. I agree that as a Promoter, this Agreement grants me the limited authority to promote and sell the products VISALUS markets subject to the terms and conditions established by VISALUS.

13. I will not make any false or misleading statements about VISALUS or its marketing program. I agree that I will operate in a lawful, ethical and moral manner and will not engage in or perform any misleading, deceptive or unethical practices. In the event I violate any of these conditions, my position may be terminated without further payment or compensation of any kind.

14. I acknowledge that I am responsible for supervising and supporting Promoters I sponsor into the program and in my commissionable network. I agree to maintain monthly communication and support to those individuals in my commissionable network through written or verbal communication and attendance at meetings.

15. I acknowledge that VISALUS expressly reserves all proprietary rights to the company's trademarks, tradenames, logos ("Proprietary Marks") and copyrighted materials. I understand, acknowledge and agree that any monies which I pay VISALUS are in consideration of my receiving a non-exclusive license, during the term of this Agreement to use the Proprietary Marks of VISALUS as stipulated in the Policies and Procedures and in conjunction with the marketing program provided to me. I further agree that I will not use VISALUS's Proprietary Marks in any form whatsoever except as permitted in writing by VISALUS or in advertising or promotion materials provided, designed or published by VISALUS. I understand that I may not photocopy or duplicate any materials provided by or purchased

from VISALUS without written authorization and that the unauthorized use of any Proprietary Mark is a violation of federal law and this Agreement, constituting grounds for termination of this Agreement by VISALUS.

16. I understand that as a Promoter, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement and VISALUS Policies and Procedures.

17. I acknowledge that I am not guaranteed any income nor am I assured any profits or success. I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts have been made by VISALUS or any VISALUS Promoters. In this connection, I shall not represent directly or indirectly that any person may, can or will earn any stated gross or net amount, nor that sponsorship of others is easy to secure or retain, or that substantially all Promoters will succeed.

18. I acknowledge that I have the right to sign up as many personal customers as I wish. I will receive a commission each month from my personal customers' purchases and my downline network in accordance with the VISALUS Compensation Plan then in effect.

19. I agree to indemnify and hold harmless VISALUS from any and all claims losses, damages and expenses, including any attorney's fees, arising out of my actions or conduct in violation of this Agreement, Compensation Plan or any Policy or Procedure of VISALUS. I agree that in order to recoup any damages and expenses it has incurred due to such violation(s), VISALUS may offset any commissions or other payments due me. In the event a dispute arises as to the respective rights, duties and obligations under this Agreement, Compensation Plan or the Policies and Procedures of VISALUS, it is agreed that such disputes shall be exclusively resolved in the Circuit Court for Oakland County, State of Michigan, or Federal Court located in Detroit, Michigan. Michigan law shall apply to the resolution of all disputes. Louisiana residents may choose Louisiana law and jurisdiction.

20. I acknowledge that I have read and fully understand the VISALUS Policies and Procedures and Compensation Plan, which are incorporated herein by reference and are binding upon me. In order to maintain a viable marketing program and to comply with changes in federal, state or local laws or economic conditions, VISALUS may revise its Compensation Plan and Policies and Procedures from time to time. All changes thereto shall be effective upon verbal or written notice to me and become a binding part of this Agreement. The home office prior to use or publication must approve all advertisements using the Proprietary Marks of VISALUS.

21. I acknowledge that this Agreement, Compensation Plan and the Policies and Procedures incorporated herein by reference, constitute the entire Agreement between the parties and shall not be modified or amended except in writing signed by VISALUS. This Agreement shall be binding upon and inure to the benefit of heirs, successors, and permitted assigns of the parties hereto. If any provision of the Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby.

22. I agree to abide by the terms of the noninterference and non-disclosure policy of VISALUS.

23. During the term of this Agreement (and any renewals), I will not sell any other products for any entity competing with VISALUS. I agree that I no longer promote any other organization that utilizes a multi-tiered compensation plan.

24. During the term of this Agreement (and any renewals) and for one (1) year thereafter, I understand and agree that I will not contact, solicit, or recruit any VIP, whether active or inactive, into any organization that utilizes a multi-tiered compensation plan. This includes indirect recruiting through Facebook or other social media. I acknowledge that my violation of this provision will result in immediate termination of my Promotership and payments of any kind.

25. I understand that if for any reason a VIP violates any of the terms of the Agreement and/or these Policies and Procedures, ViSalus reserves the right to immediately deactivate or terminate the VIP's position. Such action by ViSalus will terminate any and all rights of the VIP and any further payments of any kind and is effective at the time of said violation.

26. ViSalus Executive and Business Opportunity Return Policy: An Independent Promoter who cancels their Promotership within 30 days of enrollment may return unused products from the Promoter Systems which are unopened and in resalable condition. A refund will be issued for the value of the Business Opportunity ($49) and the value of unused and saleable products up to $450. If an Independent Promoter cancels their Promotership within their first year but more than 30 days after their enrollment date, the same guidelines apply however returned, saleable products will result in a product credit equal to the discounted value of those products (up to $450) rather than a refund and will be subject to a restocking fee.

340 E. Big Beaver Rd Suite 400, Troy, MI 48083 • Customer Service 1.877.VISALUS • vi.com
© 2013 ViSalus, Inc. All rights reserved. D1000US026 09.2013 2/2